PRYOR, Circuit Judge,
concurring in part and dissenting in part:
I concur in the resolution by the majority opinion of some of the issues raised in this appeal. I concur in the denial of a judgment as a matter of law in favor of Francis McCarroll and Safe Hurricane Shutters, Inc., under the in pari delicto doctrine and based on the sufficiency of the evidence. I also concur in the denial of a judgment as a matter of law in favor of McCarroll on the issue of individual liability as an employer under the Fair Labor Standards Act. And I concur in the resolution of the evidentiary issues addressed in the majority opinion.
But I respectfully dissent from the resolution of the appeal for two reasons. First, the district court abused its discretion when it refused to instruct the jury about the fluctuating workweek. Second, the district court erred when it concluded that, based on the evidence presented at trial, a reasonable jury could find sufficient facts to render Steve Heidelberger liable as an employer within the meaning of the Act. I would reverse and remand for a new trial with respect to McCarroll and Safe Hurricane Shutters, and grant a judgment as a matter of law in favor of Heidelberger.

A. The District Court Abused Its Discretion When It Refused to Instruct the Jury About the Fluctuating Workweek Method.

The majority opinion concludes that the district court did not abuse its discretion when it refused to instruct the jury on the fluctuating workweek method, but I disagree. A refusal to give a jury instruction will amount to an abuse of discretion when “(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party.” Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211, 1224 (11th Cir.2012). The defendants have established each of these elements.
The requested jury instruction provides an accurate statement of the law on the fluctuating workweek. The defendants requested a jury instruction that explained the difference between the time-and-a-half method and the fluctuating workweek method as follows:
The Act requires an employer to pay its employees at a rate of at least one and one-half times their “regular rate” for time worked in any one work week over 40 hours. This is commonly known as time-and-a-half pay for “overtime” work. The employee’s “regular rate” is simply the employee’s hourly rate, for those employees compensated by way of an hourly rate. All overtime hours worked must be compensated at one and one- *1319 half times the regular rate if an employee is being paid hourly.
If you determine that Plaintiffs were paid a salary then the FLSA considers the Plaintiffs to have been paid for all hours worked at a straight time rate, and only an additional halftime is owed for overtime hours, not one and one-half their regular rates. This can be demonstrated as follows: If you find a plaintiff worked 50 hours per week and was paid $500, his hourly rate is $10.00/hr ($500 -h 50 = $10/hr) and his half-time rate is $5 ($10/hr x .5 = $5/hr). Thus, if you found that such a plaintiff worked overtime one week, you would award him $50 ($5/hr x 10/hrs).
This instruction is consistent with the interpretive rule promulgated by the Department of Labor. See 29 C.F.R. § 778.114(a). According to that rule, the calculation of overtime under the fluctuating workweek method differs from the traditional time-and-a-half calculation in two ways: (1) “the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week,” and (2) “[pjayment for overtime hours at one-half [of the regular] rate in addition to the salary satisfies the overtime pay requirement.” Id. The requested instruction was a correct statement of the law, and the majority opinion does not suggest otherwise.
The record also supports the potential application of the fluctuating workweek method. The fluctuating workweek method applies “[wjhere there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number.” Id. Mario Feliciano testified that his hours varied each week, but that he received the same salary each week, no matter how many hours he worked. And the defendants introduced Feliciano’s letter of employment, which said that Feliciano earned $800 per week, not $800 for the first 40 hours he worked each week. Augustin Milan testified that “there was a clear and mutual understanding between [him] and the company that when [he] would work each week no matter how many hours [he] worked [he] would get that same amount of pay.” Because the shutter installers could not be salaried employees who are ineligible for overtime, an agreement of this sort would evidence a fluctuating workweek agreement, and the majority opinion does not suggest otherwise.
The failure to give the instruction on the fluctuating workweek method prejudiced the defendants. The district court not only refused to give any jury instruction that described the fluctuating workweek method, but it repeatedly instructed the jury as follows that, if the employees proved that they had worked more than 40 hours per week, the employees would be owed time-and-a-half:
This case arises under the Fair Labor Standards Act, the [fjederal law that among other things provides for the payment of time-and-a-half overtime pay. The plaintiffs claim that the defendants did not pay them the overtime pay required by law.
The plaintiffs, in fact, claimed that they were not paid overtime or straight time or, in other words, they were only paid for the first 40 hours they worked each week and were not paid at all for the hours they worked in addition to 40 hours.
Therefore, the term overtime in this case includes such overtime-includes both-such overtime and straight time.
The [A]et requires an employer to pay its employee at a rate of at least one- *1320 and-a-half times their regular rate for the time worked in one week over 40 hours. This is commonly known as time-and-a-half pay for overtime worked.
The employee’s regular rate during a particular week is the basis for calculating any overtime pay due him for that week. The regular rate for a week is determined by dividing the first 40 hours worked into the total wages paid for those 40 hours. The overtime rate then would be one-and-a-half of that rate and would be owing for each hour in excess of 40 hours worked during the workweek.
If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay on which time-and-a-half hours must be paid is computed by dividing the salary by the number of hours which the salary is intended to compensate. For example, if an employee is hired at a salary of $220.80 for a 40-hour week, his regular rate is $5.52 an hour.
The majority opinion contends that the jury instructions adequately instructed the jury about the fluctuating workweek method, but that contention fails for two reasons. First, the majority opinion alleges that “[t]he district court properly instructed the jury to calculate Appellees’ regular rates of pay using the number of hours their salaries were intended to compensate,” Majority Opinion at 1311, but the majority opinion fails to quote the relevant jury instruction. The instruction required the jury to award only time-and-a-half on the regular rate: “If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay on which time- and-a-half hours must be paid is computed by dividing the salary by the number of hours which the salary is intended to compensate.” That instruction is fundamentally inconsistent with the application of the fluctuating workweek method, under which only half-time is owed. Second, the majority opinion suggests that the vague instruction that “[t]he measure of damages is the difference between what the employee should have been paid under the act and the amounts that you find were actually paid” satisfactorily instructed the jury about the fluctuating workweek method, id. at 1260, but that instruction neither informed the jury of the existence of the fluctuating workweek method nor informed the jury how to calculate it. Because the jury was never informed that the employees might be owed only half-time, the defendants were prejudiced by the jury instructions, and the district court abused its discretion when it refused to instruct the jury about the fluctuating workweek method.

B. Heidelberger Is Not an Employer Within the Meaning of the Act.

The majority opinion also erroneously concludes that the evidence establishes a legally sufficient basis to hold Heidelber-ger liable as an employer under the Act. Id. at 1314. A director of a company will be held liable as an employer under the Act only if he “ha[s] operational control of significant aspects of [the company’s] day-to-day functions, including compensation of employees or other matters in relation to an employee.” See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir.2008) (internal quotation marks omitted). The majority opinion concludes that Heidelberger meets this standard because he: (1) was present at Safe Hurricane Shutters at least a few days but not more than one week per month; (2) visited job sites to observe the progress of shutter installations during some of those visits; (3) met with installers toward the end of the life of the business to tell the installers that the com *1321 pany would not be able to pay them on time; and (4) used $20,000 of his own funds to satisfy the payroll obligations. Majority Opinion at 1314. But these isolated incidents do not establish the day-today operational control of the business required by our precedents.
The testimony of the installers at trial establishes that Heidelberger was not involved in the day-to-day operation of the business. When he visited the two largest job sites, Heidelberger did nothing more than observe the progress of the installers at two big projects. He did not instruct the installers on their work because he did not know how to install shutters. He also could not communicate with most of the installers because he spoke “[v]ery, very little” Spanish, and the primary language of most of the installers was Spanish. Heidelberger never gave the installers work orders, and Milan testified that he “never knew” Heidelberger. Heidelber-ger’s one-time participation in a payroll dispute toward the end of the life of the company does not establish that he exercised day-to-day control.
Our decision in Patel v. Wargo, 803 F.2d 632 (11th Cir.1986), is instructive. Like Heidelberger, Wargo was a director of and a principal, but not majority, stockholder in a company. Id. at 637. Unlike Heidel-berger, Wargo was also president of that company. Id. Nevertheless, the district court found that Wargo was neither responsible for the contract of the plaintiff employee nor involved in the day-to-day operation of the business, and we affirmed. Id. at 638. Similarly, Heidelberger had no responsibility for the contracts with Felici-ano or Milan and was not involved in the day-to-day operations of Safe Hurricane Shutters. The installers presented no testimony that they were instructed to ask questions of Heidelberger in the absence of the Chief Executive Officer, Edward Leiva; that Heidelberger had any authority to act without Leiva’s approval; or that Heidelberger resolved day-to-day problems on his short visits to the business each month. Based on these facts, I would conclude that Heidelberger “lacked the operational control necessary for the imposition of liability as an ‘employer’ under the [Act].” See id.
I concur in part and dissent in part. I concur in the decision that MeCarroll and Safe Hurricane Shutters are not entitled to a judgment as a matter of law, but I would reverse and remand for a new trial with respect to MeCarroll and Safe Hurricane Shutters and grant a judgment as a matter of law in favor of Heidelberger.